IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY DAVALOS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:11-CV-0222-P |
| | § | |
| JASON JOHNS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

The Court has under consideration Defendant Jason Johns's ("Defendant") Motion for Partial Summary Judgment Based on Qualified Immunity (doc. 29). He seeks summary judgment on Plaintiff's claims of unlawful detention, unlawful arrest, unlawful search, and failure to provide medical care. (*See* Mot. at 1-6; Br. Supp. Mot. at 5-13, doc. 30.) But he specifically states that he does not seek summary judgment on her claim of excessive force. (*See* Mot. at 1.) After reviewing the briefing, evidence,[1] and applicable law, the Court GRANTS the motion.

## I. BACKGROUND[2]

This case arises out of June 28, 2009 incidents that occurred after Plaintiff wrecked her vehicle. (*See* Compl. ¶¶ 6.01 to 6.02, doc. 1.) She alleges that a tire blew out causing her to lose control of her vehicle and crash into a wall. (*Id.* ¶ 6.02.)

At or around 9:00 p.m. on June 28, 2009, Defendant, a City of Dallas Police Officer, and

---

[1]Defendant has filed an appendix with his summary judgment briefing. (*See* App. Supp. Def.'s Mot. ("Def.'s App."), doc. 31.) Instead of filing an appendix, Plaintiff attaches five exhibits to her response to the motion. (*See* Pl.'s Resp., doc. 33.)

[2]Except where noted, the factual background is undisputed or viewed in the light most favorable to the non-movant as required when ruling on a motion for summary judgment.

Nathan Smith, a Dallas Fire-Rescue Paramedic ("the paramedic"), independently arrived on the scene of a single-vehicle accident involving Plaintiff, and found her sitting on the tailgate of her wrecked truck. (*See* Aff. Johns at 1, attached to Def.'s App.; Aff. Smith at 1, attached to Def.'s App.; Dep. Davalos at 53-56, attached as Ex. A to Pl.'s Resp.) The vehicle had two or more flat tires and had sustained significant damage from the accident. (Dep. Davalos at 43, 55; Ex. D (Photos) attached to Pl.'s Resp.) The air bags deployed and Plaintiff felt dizzy or light-headed following the accident. (Dep. Davalos at 28, 56-57.) The vehicle was "completely totaled." (*Id.* at 42.) Within "a matter of minutes, maybe a little bit longer," two women stopped to check on Plaintiff. (*Id.* at 52.) Other than these three women, no one was initially at the accident scene. (*Id.* at 55.)

When the paramedic arrived,[3] he noticed bystanders at the accident scene. (Aff. Smith at 1.) He viewed Plaintiff as "very intoxicated and belligerent." (*Id.*) According to him, she "repeatedly went off on a tangent" and she would not cooperate with the male police officer who had arrived on the scene. (*Id.*) From his perspective, although everyone at the scene "attempted to calm her down . . . she was far too intoxicated to control her emotions and appreciate the efforts of the people around her." (*Id.*) He examined Plaintiff but found no serious injury. (*Id.*) But he did document "a small bruise on her right eye" that, according to Plaintiff's fiancé, resulted from an earlier fight Plaintiff had with her sister. (*Id.* at 2.) He left the scene without Plaintiff because she had no need to go to a hospital. (*Id.* at 1.) He did not recall any complaints about ant bites. (*Id.*)

At the time of the incidents involving Plaintiff, Defendant had worked as a City of Dallas

---

[3]Plaintiff does not remember whether the paramedic or Defendant arrived at the scene first, but believes it was Defendant. (Dep. Davalos at 53.) According to both responders, the paramedic arrived first. (Aff. Johns at 1; Aff. Smith at 1.) This potential factual dispute is not material to the issues before the Court.

Police Officer for at least thirty months. (*See* Aff. Johns at 1.) Fire-Rescue personnel told him that Plaintiff was intoxicated and Defendant later personally "smelled an alcoholic beverage emitting from her person." (*Id.* at 1-2.) He tried to determine whether Plaintiff was driving at the time of the accident. (*Id.* at 1.) Plaintiff claimed that her sister was driving, and at one point, dropped to her knees yelling that it was her sister. (*Id.* at 1-2.) He attributed the reference to the sister to Plaintiff's "level of intoxication," because no one at the scene identified herself as her sister. (*Id.* at 1.)

According to Defendant, when he tried to help Plaintiff stand, she unexpectedly struck him on the face causing him to take her to the ground using a standard takedown technique. (*Id.* at 2.) At that point, he "decided to arrest her for assault and possibly public intoxication." (*Id.*) A few moments later, Plaintiff's fiancé arrived. (*Id.*) Defendant avers that, at that time, Plaintiff had not complained of any ant bites and Defendant had not been bitten. (*Id.*) When a female officer, Sergeant Magiera, discovered ants on Plaintiff's clothes, Defendant requested Dallas Fire-Rescue to return. (*Id.*) They returned and washed the ants off of Plaintiff's clothing before Sergeant Magiera resumed her custodial search and before she and Defendant escorted Plaintiff to the squad car. (*Id.*)

Defendant took Plaintiff to jail for assaulting a public servant. (*Id.*) Defendant avers that he, Plaintiff, and another officer walked into the jail and he completed an incident report while the other officer took Plaintiff for processing. (*Id.*) According to Defendant, when he left the jail, he saw Plaintiff "strapped to a chair," which is generally only done for "arrestees who are acting out." (*Id.*) He denies striking Plaintiff on the face, dragging her on the ground, or assaulting or threatening to assault her. (*Id.* at 3.) He also states that he never saw anyone assault or threaten to assault her. (*Id.*) Based upon her actions, demeanor, and "apparent state of intoxication," Defendant viewed Plaintiff

3

as "a danger to herself and others," but "did not arrest her for the offense of public intoxication." (*Id.*)

Plaintiff views the events differently. According to her, Defendant "had an attitude" as soon as he arrived on the scene. (Dep. Davalos at 56.) As she stood by her vehicle, she "felt like he was coming in on [her], trying to grab [her] arm or something, and so [she jerked] away" and he then threw her to the ground and put all of his weight on her. (*Id.* at 62.) Once she was on the ground and handcuffed, she began "to scream and yell and cuss." (*Id.* at 64.) Being upset and very mad, she yelled that "they were all going to pay for this." (*Id.* at 65.) She soon realized that ants were biting her, but "everyone was ignoring th[at] fact." (*Id.* at 64.) When she saw her fiancé, she "kept yelling they're biting me." (*Id.* at 65, 68.) She was bitten by "a lot of ants." (*Id.* at 61.) When she heard Defendant tell her fiancé that she had hit him, she screamed: "[Y]ou know, babe, I didn't do it. They're F-ing lying. I didn't do it. I didn't do it. You know, help me, please." (*Id.* at 68.) At that time, she "kept begging for help and saying that they're biting me. They're biting me." (*Id.*) She estimates that she was on the ground "five to ten minutes." (*Id.* at 71.)

Plaintiff pleaded with everyone to take her to the hospital before she was put in the squad car. (*Id.* at 77-78.) At that point, she wanted to go to the hospital because of the ant bites. (*Id.* at 78.) But she later realized that she should have gone to the hospital just to make sure she did not sustain any injuries from the accident. (*Id.*) She recalls interacting with Dallas Fire-Rescue personnel before being placed in the squad car. (*Id.* at 72.) Their efforts to wash the ants off angered her because the ants were under her clothes. (*Id.* at 72-74.)

Even as she was "about to get into the squad car," Plaintiff was still screaming, yelling, and cussing. (*Id.* at 71-72.) She told her fiancé that "this is BS. They're taking me to jail for nothing."

(*Id.* at 72.) After she was placed in the squad car, she pleaded with Defendant to either take her home or to the hospital. (*Id.* at 77.) She started kicking the back of seat in anger and told him that she needed to go to the hospital because of the accident. (*Id.*) Defendant instead took her to jail. (*See id.* at 81-82.) According to Plaintiff, after arriving at the jail, Defendant punched her in the right eye before removing her from the squad car, punched her again near a wall that essentially knocked her out, and helped drag her into the jail. (*Id.* at 81-83.) At that point, she did not know who took over her custody. (*Id.* at 84.) But when she regained consciousness, she was wearing "a Dallas County jumper." (*Id.*)

When Plaintiff's fiancé, Francisco Salamanca, arrived at the accident scene, Defendant was "sitting pretty much on top of [his] fiancé." (Dep. Salamanca at 22, attached as Ex. B to Pl.'s Resp.) Plaintiff was yelling and screaming and telling him "that she was getting bit by ants." (*Id.* at 26, 30-32, 36.) The fiancé "pretty much told [Defendant] that she was getting bit by ants." (*Id.* at 33-34.) According to him, the paramedics left the scene without rendering aid. (*Id.* at 34-35.) He estimated that Plaintiff was on the ground for twenty to thirty minutes begging for help. (*Id.* at 61.)

Although the parties' versions of the events differ substantially, there is some agreement. There is no dispute that Plaintiff received numerous ant bites. (*See* Ex. C (Photos) attached to Pl.'s Resp.) The parties further agree that a female officer (Sergeant Magiera) searched her and discovered the ants on her. (*See* Dep. Davalos at 76; Aff. Johns at 2.) They agree that personnel from Dallas Fire-Rescue used water to get the ants off her clothes before Defendant took her to jail. (*See* Dep. Davalos at 72-73; Aff. Johns at 2.)

Pursuant to 42 U.S.C. § 1983, Plaintiff sues Defendant for unlawful arrest/detention, unlaw-

ful search, failure to provide proper and timely medical attention, and excessive force.[4] (*See* Compl. ¶¶ 4.01, 6.21, 7.03, 8.03.)[5] Defendant asserts a defense of qualified immunity and seeks summary judgment on all claims except the claim of excessive force. (*See* Mot. at 1-6.) The parties have fully briefed the motion and it is ripe for ruling.

## II. MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56(a), courts "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). But assertion of a "qualified-immun-

---

[4]In conjunction with the excessive force claim, Plaintiff alternatively asserts that Defendant failed to intervene to assist her while excessive force was used against her. (*See* Compl. ¶ 8.03.) Because Defendant does not specifically discuss the related failure to intervene claim, (*see* Mot. at 1-6), it appears that he considers it to be the same as the asserted excessive force claim. For purposes of resolving the instant motion, the Court will likewise consider the related claims together as excessive force.

[5]Plaintiff also suggests that she might raise state law claims. (*See* Compl. ¶ 2.02 (stating that the "Court has supplemental jurisdiction over state law claims, if any"). ) This uncertain suggestion is insufficient to assert a state law claim. And the Complaint specifically states that the claims only arise under 42 U.S.C. § 1983. (*See id.* ¶ 4.01.) Furthermore, both asserted Causes of Action arise under § 1983. (*See id.* ¶¶ 7.01 through 8.05.) Consequently, the Court finds that Plaintiff has only asserted claims under § 1983 in this action.

[6]This subdivision "carries forward the summary judgment standard expressed in former subdivision (c)," with only one non-substantive change – replacing "issue" with "dispute." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.). Despite the 2010 amendments, the summary judgment standard "remains unchanged." *Id.*

ity defense alters the usual summary judgment burden of proof." *See Brown v. Callahan,* 623 F.3d 249, 253 (5th Cir. 2010). When governmental employees assert such defense in a motion for summary judgment, they need only assert the defense in good faith. *See Gates v. Tex. Dep't of Protective & Regulatory Servs.,* 537 F.3d 404, 419 (5th Cir. 2008); *Hathaway v. Bazany,* 507 F.3d 312, 319 (5th Cir. 2007). They have no burden to put forth evidence. *Beck v. Tex. State Bd. of Dental Exam'rs,* 204 F.3d 629, 633-34 (5th Cir. 2000).

The burden then shifts to the non-movant to show that the defense does not apply. *See Brown,* 623 F.3d at 253; *Club Retro, L.L.C. v. Hilton,* 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir. 2002) (en banc). Although courts view the record and all reasonable inferences drawn from the record in a light most favorable to the non-movant, *Anderson,* 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the non-movant must identify specific evidence in the record and show how it presents a genuine dispute of material fact for trial. *Celotex,* 477 U.S. at 324; Fed. R. Civ. P. 56(c). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *See Anderson,* 477 U.S. at 249-50; *accord* Fed. R. Civ. P. 56(c). In other words, "conclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment." *RSR Corp. v. Int'l Ins. Co.,* 612 F.3d 851, 857 (5th Cir. 2010). Courts do not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Lynch Props., Inc. v. Potomac Ins. Co.,* 140 F.3d 622. 625 (5th Cir. 1998); *accord Roberson v. Game Stop, Inc.,* 395 F. Supp. 2d 463, 468 (N.D. Tex. 2005), *aff'd sub nom. Roberson v. Game Stop/Babbage's,* 152 F. App'x 356 (5th Cir. 2005). Courts have no duty, furthermore, to search the record for a material disputed fact. *See RSR Corp.,* 612 F.3d at 857; *Hernandez v. Yellow Transp.,*

*Inc.*, 670 F.3d 644, 651 (5th Cir.), *cert. denied*, 133 S. Ct. 136 (2012).

### III. QUALIFIED IMMUNITY

Defendant argues that he is entitled to qualified immunity. (Mot. at 1.) That defense "shields a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts did not violate clearly established constitutional or statutory law of which a reasonable person would have known." *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007); *accord Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). Qualified immunity recognizes that government officials may "make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (citation and internal quotation marks omitted).

When a defendant in an action brought pursuant to 42 U.S.C. § 1983, "pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *See Hampton*, 480 F.3d at 363 (quoting *Pierce v. Smith,* 117 F.3d 866, 871-72 (5th Cir. 1997)). By establishing that he is a city police officer, Defendant has shown that he is a governmental official whose position involves the exercise of discretion. *See, e.g., Curtis v. Anthony*, 710 F.3d 587, 594-600 (5th Cir. 2013) (per curiam) (recognizing that police officers may be entitled to qualified immunity); *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (same), *cert. denied*, 132 S. Ct. 2433 (2012).

To decide whether a defendant is protected by qualified immunity, the courts conduct a two-prong inquiry. Under the first prong, courts consider whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S.

194, 200 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009).   Under the second prong, courts determine whether the violated constitutional right was clearly established within the specific context of the case. *Id.* at 201.   "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.   It is within the discretion of the courts to decide which of the two prongs to address first in light of the circumstances particular to each case. *Pearson*, 555 U.S. at 236; *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 409 (5th Cir. 2009) ("*Saucier's* rigid 'order of battle'. . . is now advisory.").   If the court answers both the constitutional violation and clearly established questions in the affirmative, the officer is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410.

Here, Defendant has carried his summary judgment burden by asserting his qualified immunity defense. *See Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008).   The burden now shifts to Plaintiff to produce evidence showing that Defendant violated her constitutional rights and that the violation was objectively unreasonable under clearly established law at the time of the violation. *See Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407-08 (5th Cir. 2007).

Plaintiff alleges several constitutional violations in her complaint – unlawful search, unlawful detention, unlawful arrest, failure to provide proper and timely medical attention, excessive force, and failure to intervene to assist her.   As already mentioned, neither the claim of excessive force nor the related failure to intervene are placed at issue in Defendant's motion for summary judgment.   The Court thus only addresses the other alleged constitutional violations.

## A. Unlawful Search

Plaintiff asserts a claim for unlawful search. (*See* Compl. ¶¶ 6.21, 7.03.) Defendant contends that he conducted no search, and seeks summary judgment on that claim (*See* Mot. at 6.) In response to the motion, Plaintiff asks the Court to dismiss this claim. (*See* Mem. & Br. Resp. at 1, n.1, doc. 34.) Given that response, the Court grants Defendant summary judgment on the unlawful search claim without further consideration.

## B. Unlawful Detention and Arrest

Plaintiff also asserts claims of unlawful detention and arrest. (*See* Compl. ¶¶ 6.21, 7.03.) Although she does not identify a specific constitutional provision with respect to these claims, she invokes the Fourth Amendment in the jurisdictional section of her Complaint. (*See id.* ¶ 2.01.)

Claims of unlawful detention and arrest arise under the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Arrests naturally qualify as a seizure under this provision. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). Unlawful detentions likewise constitute an unreasonable seizure. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 845 (5th Cir. 2009). The "touchstone of Fourth Amendment analysis is reasonableness." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)). And courts measure reasonableness "in objective terms by examining the totality of the circumstances." *Id.* The circumstances include "the expertise and experience of the law enforcement officials." *Mack v. City of Abilene*, 461 F.3d 547, 552 n.1 (5th Cir. 2006).

An arrest is necessarily unreasonable when it is not supported by probable cause to believe that the person arrested was committing or had committed an offense. *Haggerty v. Tex. S. Univ.*, 391

10

F.3d 653, 655-56 (5th Cir. 2004). The officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). In other words, an officer can reasonably arrest an individual even when the subjective reason for the arrest is not supported by probable cause, so long as the facts known to the officer are sufficient to find probable cause for some criminal offense. "Probable cause exists where the facts and circumstances within [an officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009) (citation and internal quotation marks omitted). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 245 n.13 (1983). It does not require that a preponderance of the evidence show the belief to be true. *United States v. Pack*, 612 F.3d 341, 352 n.7 (5th Cir.), *op. modified on other grounds*, 622 F.3d 383 (5th Cir. 2010).

"As applied to the qualified immunity inquiry, the plaintiff must show that the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime." *Good v. Curtis*, 601 F.3d 393, 401 (5th Cir. 2010). With respect to the claimed false arrest, Defendant "is entitled to qualified immunity if a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which [he] was aware, there was a fair probability that [Plaintiff] had committed or was committing an offense." *Haggerty*, 391 F.3d at 656. "Even law enforcement officials who reasonably, but mistakenly, conclude that probable cause is present are entitled to immunity." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)).

11

Unlike a claim for unlawful arrest, which requires that the seizure be supported by probable cause, some limited detentions may be "justified by such substantial law enforcement interests that they may be made on less than probable cause, so long as police have an articulable basis for suspecting criminal activity." *Michigan v. Summers*, 452 U.S. 692, 699 (1981). To overcome a qualified immunity defense with respect to a claim of unlawful detention that falls short of an actual arrest, the Plaintiff must establish that a detention occurred which "was not based on reasonable suspicion supported by articulable facts that criminal activity was occurring." *Coons v. Lain*, 277 F. App'x 467, 470 (5th Cir. 2008) (per curiam) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)); *accord Peterson*, 588 F.3d at 845.

The undisputed evidence in this case shows that Defendant and Dallas Fire-Rescue personnel arrived on the scene of an apparently significant, single-vehicle accident in which Plaintiff was the only person at the scene who was involved in the accident. A paramedic viewed Plaintiff as "very intoxicated and belligerent." That paramedic or some other Fire-Rescue personnel told Defendant that she was intoxicated. As Defendant waited for other officers to arrive, he observed Plaintiff's actions and demeanor. When Plaintiff began yelling about an absent sister driving the vehicle, he attributed the comments to her level of intoxication. When he approached Plaintiff, he personally smelled alcohol emitting from her. She jerked away from him as he reached for her. As described by Defendant and the paramedic and not contested by Plaintiff, her demeanor at the scene supports a reasonable conclusion that she was intoxicated. Given the apparent severity of the accident and the perceived level of intoxication, a reasonable officer could conclude that Plaintiff was a danger to herself or others. She was in a public place and a reasonable officer could conclude that she was intoxicated.

Plaintiff has failed to create a factual dispute regarding whether Defendant could have reasonably believed that he had probable cause to arrest her for public intoxication under Texas law. In Texas, a person commits the offense of public intoxication "if the person appears in a public place while intoxicated to the degree that the person may endanger the person or another." Tex. Penal Code Ann. § 49.02(a) (West 2012). A person is intoxicated within the meaning of Texas law, when that person does not have "the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." *Id.* § 49.01(2)(A). A City of Dallas Police Officer with at least thirty months experience, like Defendant, would have sufficient experience with intoxicated persons to make an adequate assessment as to whether an individual is publically intoxicated under Texas law. The totality of the circumstances known to Defendant, i.e., an apparently significant single-vehicle accident on public street, observed demeanor and actions of Plaintiff, the Dallas Fire-Rescue statement that she was intoxicated, and the smell of alcohol, provide a reasonable suspicion that Plaintiff was publically intoxicated in violation of Texas law. Indeed, the undisputed facts are sufficient to satisfy the higher standard of probable cause to arrest Plaintiff for public intoxication. Questions of probable cause and reasonable suspicion are questions of law that may be resolved based upon undisputed underlying facts. *United States v. Pack*, 612 F.3d 341, 349 n.5 (5th Cir.), *op. modified on other grounds*, 622 F.3d 383 (5th Cir. 2010).

Plaintiff provides nothing to materially contradict these conclusions. She presents nothing to indicate that she was not intoxicated or that Defendant could not have reasonably believed that she was intoxicated. Although she denies being intoxicated in her response to the summary judgment motion, she provides no personal affidavit or deposition testimony to that effect. She instead

relies on deposition testimony from her cousin, Ana Garcia, that simply says that Plaintiff was sober when they parted company at six or seven o'clock. (*See* Pl.'s Mem. & Br. Resp. at 2 (citing Dep. Garcia at 13, 29, 30, 32, attached as Ex. E to Pl.'s Resp.).)[7]  The accident occurred just prior to nine o'clock – about two or three hours after the cousin last saw Plaintiff.  That Plaintiff was sober when with her cousin provides no reasonable basis for finding that she was not intoxicated when Defendant arrived at the accident scene two or three hours later.  Moreover, even if Plaintiff had personally denied being intoxicated, the issue is not whether she was actually intoxicated, but whether Defendant "was reasonable in *believing* she was intoxicated." *See Gibson v. Rich*, 44 F.3d 274, 278 n.7 (5th Cir. 1995).  Regardless of any denial of intoxication, if the facts in evidence indicate that Defendant was justified in believing that Plaintiff was intoxicated, then Defendant is entitled to qualified immunity on the claim of wrongful arrest.  *See id.*  The same is true with respect to qualified immunity on the claimed unlawful detention that occurred prior to the arrest.

Plaintiff has created no fact dispute as to whether articulable facts provided Defendant a reasonable suspicion that she was engaging in criminal activity, i.e., public intoxication, or as to whether the totality of the circumstances provided Defendant probable cause to arrest her for public intoxication.  Under the facts presented and viewed in a light most favorable to Plaintiff, a fair probability existed that Plaintiff was publically intoxicated in violation of Texas law.  Defendant is entitled to qualified immunity and to judgment as a matter of law on the claims of unlawful detention and arrest asserted against him.  Accordingly, the Court grants Defendant summary judgment on these claims.

---

[7]Plaintiff's supporting memorandum actually cites to Exhibit C, which are photographs of the ant bites.  The pinpoint citations support finding that she intended to cite to Exhibit E.

## C. **Medical Attention**

Without identifying a specific constitutional provision, Plaintiff also asserts that Defendant failed to provide proper and timely medical attention. (*See* Compl. ¶ 6.21.) The factual basis for this claim is uncertain. It could conceivably relate to her being light-headed following the accident. (*See id.* ¶¶ 6.02 to 6.04.) It might relate to a failure to properly and timely treat the numerous ant bites she received when arrested. (*See id.* ¶¶ 6.08 to 6.10.) But it also appears that Plaintiff may premise the claim on a failure to immediately take her to the hospital after she regained consciousness at the jail. (*See id.* ¶ 6.14.) Plaintiff "seeks redress" for a "failure to provide proper and timely medical attention." (*See id.* ¶ 6.21.) But she fails to actually assert a medical-care claim in either of her Causes of Action. (*See id.* ¶¶ 7.01 to 7.06 and 8.01 to 8.05.) Defendant, nevertheless, seeks summary judgment on "any such claim" based on a failure to provide medical care. (Br. Supp. Mot. at 11; *accord* Mot. at 3.) Defendant gave Plaintiff adequate notice that he asserted qualified immunity and sought summary judgment as to all claims premised on a failure to provide medical care. Even though Plaintiff's complaint could be more clear regarding asserting a denial-of-medical-care claim, the Court will consider each of the three factual bases for the claim.[8]

This claim arises under the Fourteenth Amendment. *See Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996) ("After the initial incidents of a seizure have concluded and an individual is being detained by police officials but has yet to be booked, an arrestee's right to medical attention, like that of a pretrial detainee, derives from the Fourteenth Amendment."). "The

---

[8]Plaintiff may not preserve a claim "that she was denied timely medical aid after being punched . . . by Defendant" at the jail on grounds that she has no obligation to address grounds not raised in the motion. (*See* Pl.'s Mem. & Br. at 1 n.2.) She instead must carry her burden to show that Defendant is not entitled to qualified immunity on such claim.

standard for this claim is well-established: the plaintiff must show that an officer acted with sub-jective knowledge of a substantial risk of serious medical harm, followed by a response of deliberate indifference." *Hill v. Carroll Cnty., Miss.*, 587 F.3d 230, 237 (5th Cir. 2009). In other words, plain-tiffs must "show that the defendant acted with deliberate indifference to his serious medical needs, meaning that the defendant was subjectively aware of a substantial risk of serious harm and failed to take reasonable measures to abate that risk." *Lacy v. Shaw*, 357 F. App'x 607, 609 (5th Cir. 2009) (per curiam) (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 647-48 (5th Cir. 1996)). The Fifth Circuit has defined a "serious medical need" as "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

To show deliberate indifference,[9] Plaintiff must show that Defendant "knew of and disre-garded an excessive risk to [her] health or safety." *Gibbs v. Grimmette,* 254 F.3d 545, 549 (5th Cir. 2001). Negligence alone is not sufficient to show deliberate indifference to medical needs. *Id.* A "failure to act reasonably," furthermore, creates no inference of deliberate indifference, which is a "subjective intent to cause harm." *Wagner v. Bay City, Tex.*, 227 F.3d 316, 324 (5th Cir. 2000). To meet the "extremely high standard" of deliberate indifference, Plaintiff must show that Defendant engaged in some "conduct that would clearly evince a wanton disregard for any serious medical needs," including refusing to treat her, ignoring complaints of a serious medical need, or intention-ally treating her incorrectly. *See Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir.

---

[9]In the case of an episodic act or omission, as here, the courts use the same deliberate indif-ference standard whether the claim arises under the Eighth or Fourteenth Amendments. *Hare*, 74 F.3d at 648-50. Consequently, Eighth Amendment case law is just as authoritative in this area as cases decided under the Fourteenth Amendment.

2001). A delay in treatment violates the constitutional right to medical care only when "there has

been deliberate indifference [that] results in substantial harm." *Easter v. Powell*, 467 F.3d 459, 463

(5th Cir. 2006) (citation omitted) (alteration in original).

### 1. **Medical Care Related to Car Accident**

With respect to any medical-care claim premised on a failure to treat her for injuries sus-

tained in the car accident, Plaintiff has not shown that Defendant knew of and disregarded any

excessive risk to her health or safety. She has created no factual dispute as to whether Defendant

engaged in any conduct that clearly shows a wanton disregard for any serious medical need resulting

from the car accident. It is undisputed that a paramedic examined Plaintiff at the scene and found

no serious injury. That examination shows that Plaintiff had no serious medical need at that time.

Unless "it would be evident to a layperson that a [person] is receiving inadequate or inappro-

priate treatment," non-medical personnel, like police officers, may properly rely on an examination

by medical personnel to determine whether a serious medical need exists and whether further medi-

cal care should be administered. *Bond v. Aguinaldo*, 228 F. Supp. 2d 918, 920 (N.D. Ill. 2002) (cited

with approval in *Johnson v. Doughty*, 433 F.3d 1001, 1010-11 (7th Cir. 2006)); *accord Meloy v.*

*Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) (discussing prison official). Naturally, if non-medical

personnel have actual knowledge or a reason to believe that medical personnel improperly examined

or failed to examine a person who may have a serious medical need, they are not justified in relying

on the medical personnel or their opinions or treatment. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d

Cir. 2004). Plaintiff, however, presents nothing to create a disputed fact regarding whether Defend-

ant knew or had reason to believe that the paramedic provided an inadequate or inappropriate exam-

ination. Nothing of record indicates that Defendant had any reason to question the paramedic's

17

examination.  Viewing the facts in a light most favorable to Plaintiff, Defendant was justified in believing that she was in capable hands when the paramedic examined her.

Plaintiff relies on *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009) for the proposition that an officer is not entitled to qualified immunity merely because nearby medical personnel indicate that there is no need for medical treatment.  (Pl.'s Mem. & Br. at 5.)  The *McRaven* court, however, found reliance on the medical assessment unreasonable because the assessment was "grounded on incorrect information" and a lay person would recognize the inadequate or inappropriate treatment given the facts known by the non-medical personnel.  *See* 577 F.3d at 981.  Those facts are not present here.  *McRaven* is thus distinguishable.

On the facts known to him, Defendant properly and reasonably relied on the paramedic's examination of Plaintiff.  Relying on such an examination does not show any deliberate indifference by Defendant.  Defendant is entitled to qualified immunity on this claim.

### 2. <u>Medical Care Related to Ant Bites</u>

Plaintiff also appears to claim that Defendant failed to administer proper and timely medical care for ant bites sustained following her detention and arrest.  (*See* Compl. ¶¶ 6.08 and 6.21.)  But Plaintiff has again not shown that Defendant knew of and disregarded any excessive risk to her health or safety.  She has again failed to create a factual dispute as to whether Defendant engaged in any conduct that clearly shows a wanton disregard for any serious medical need.

Courts may infer knowledge of a substantial risk of harm when the risk was obvious.  *United States v. Gonzales*, 436 F.3d 560, 573 (5th Cir. 2006).  But ants bites are not generally considered as "present[ing] a serious medical need that poses a substantial risk of harm."  *See Severin v. Hunter*, No. 06-2780, 2007 WL 1592976, at *11 (E.D. La. May 30, 2007) (adopting report and recommenda-

tion of Magistrate Judge).  In general, there is no obvious substantial risk of harm from ant bites. And they are not typically an excessive risk to one's health or safety.  From the information before the Court, there is no basis to infer that Defendant knew of any excessive risk to Plaintiff's health or safety due to ant bites.

Plaintiff, furthermore, has created no factual dispute as to Defendant's subjective knowledge or whether he disregarded an excessive risk to her health or safety from the ant bites.  From the evidence viewed in a light most favorable to Plaintiff, the Court cannot find that Defendant subjectively knew that Plaintiff had a serious medical need due to the ants or that he deliberately disregarded such need.  There is no evidence that Defendant possessed the requisite subjective knowledge of any substantial risk of serious medical harm.  Viewed through the summary judgment prism, the evidence merely shows that Plaintiff and her fiancé informed Defendant that ants were biting her.  But there is no evidence that Defendant knew that the ants posed an excessive risk to her health or safety. As already mentioned, ants do not generally pose such a risk.  *See Severin*, 2007 WL 1592976, at *11.  Plaintiff has provided no evidence that she was particularly susceptible to ant bites or that ants otherwise posed an excessive risk to her health or safety.  And even if the ants posed such an excessive risk for some reason, she has provided nothing to indicate that Defendant knew that they posed such a risk to her.  While Defendant may have disregarded statements that ants were biting Plaintiff, such conduct of itself does not clearly evince a wanton disregard for any serious medical need.

In addition, the undisputed evidence reflects that, as soon as Sergeant Magiera alerted Defendant to the presence of ants on Plaintiff's clothes, Defendant had Dallas Fire-Rescue return to the scene.  Upon their return, Dallas Fire-Rescue personnel indeed tried to rinse or wash the ants off of her.  Plaintiff has presented nothing to show that any delay caused by Defendant resulted in

19

substantial harm to her.  Plaintiff has created no factual dispute as to whether Defendant acted with deliberate indifference with respect to medical care related to the ant bites.  Defendant is entitled to qualified immunity and judgment as a matter of law on this claim.

### 3. **Medical Care Related to Incident at Jail**

Plaintiff alleges that her pleas for medical treatment after she regained consciousness at the jail were ignored. (Compl. ¶ 6.14.)  Defendant is entitled to qualified immunity on this claim, unless Plaintiff shows that he engaged in specific conduct that shows a wanton disregard for a serious medical need.  But Plaintiff provides nothing to create a disputed fact regarding whether Defendant took any action to deny her medical care for the alleged incident at the jail.  According to her, Defendant knocked her out and helped drag her into the jail.  By her own admission, she does not know who took over her custody at that point.  She just knows that when she regained consciousness, she was in jail clothing.  From the facts before the Court, it is unknown whether she received medical treatment while she was unconscious.  Although she alleges in her complaint that pleas for medical care were ignored when she regained consciousness, she provides no evidentiary support that she even made such pleas.  Nor does she provide any evidentiary support to find that Defendant was present at that time.  The Court will not assume that Plaintiff can or will provide the necessary facts.  But even if it assumed his presence, Plaintiff has provided nothing to create a factual dispute as to whether he acted with deliberate indifference.

The vague, non-specific allegation in her complaint is insufficient to carry her burden to show that Defendant is not entitled to qualified immunity on this claim.  Plaintiff cannot merely rely on her pleadings to carry her burden to overcome an assertion of qualified immunity in the context of a motion for summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); Fed. R.

Civ. P. 56(c). Plaintiff, furthermore, admits in her complaint that she was ultimately taken to the hospital after she regained consciousness. (*See* Compl. ¶ 6.14.) She has provided no evidence that any delay in receiving treatment resulted in substantial harm to her. For all of these reasons, Defendant is entitled to qualified immunity on this claim.

In summary, Plaintiff has created no factual dispute as to whether Defendant violated her Fourteenth Amendment right to medical care. Accordingly, the Court grants Defendant summary judgment on any claim that he denied Plaintiff proper and timely medical attention.

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendant Jason John's Motion for Partial Summary Judgment Based on Qualified Immunity (doc. 29). The Court hereby dismisses the claims of unlawful search, unlawful detention, unlawful arrest, and denial of medical care with prejudice.

It is SO ORDERED, this 30th day of April, 2013.


JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE